IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARK S. DAVIS and
PATRICIA DAVIS,

        Plaintiffs,

v.                                    Civil Action No. 5:12CV52
                                                        (STAMP)
EQT PRODUCTION COMPANY,
formerly known as
Equitable Production Company,
a Pennsylvania corporation,
THOMAS VARNER and NICK CRIADO,

        Defendants.


**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFFS' MOTION TO REMAND**

I.  Background

On September 17, 2008, the plaintiffs and defendant EQT Production Company ("EQT"), then known as Equitable Production Company, entered into an oil and gas lease ("the Lease") which purported to lease the oil and gas rights to the plaintiffs' 31.12 acres of land located in Hancock County, West Virginia.  The Lease was recorded the same day in the office of the Clerk of Hancock County.

The plaintiffs filed this civil action in the Circuit Court of Hancock County, West Virginia on March 12, 2012, claiming that they were fraudulently induced to sign the Lease by EQT and its Landman, defendant Thomas Varner ("Varner"), and that the Lease is unconscionable.  The complaint seeks a declaration that the Lease is void, and also asserts claims for fraud, both generally and in the inducement, unconscionability of the Lease, unjust enrichment,

breach of implied covenant to diligently explore, develop, produce and market, the tort of outrage, and notary public improprieties and improper attestation and acknowledgment with regard to the notarization of the Lease by defendant Nick Criado ("Criado").[1]

Defendants EQT and Varner removed this action to this Court,[2] claiming diversity jurisdiction as a result of fraudulent joinder. They admit that both the plaintiffs and defendant Criado are citizens of West Virginia, but argue that defendant Criado's citizenship should be disregarded for jurisdictional purposes, because the plaintiffs have no possibility of establishing liability upon him in this action.   In the alternative, the defendants argue that misjoinder is present here, and that the claims against defendant Criado should be severed from the claims against EQT and defendant Varner, and the claims against defendant Criado alone should be remanded to state court.   The plaintiffs then filed a motion to remand, maintaining that they have asserted

---

[1]The complaint also asserts a claim entitled "arbitration clause" which argues that the arbitration clause contained within the Lease is unenforceable and unconscionable.  However, there is no allegation in the complaint or elsewhere that the defendants or any other party have attempted to enforce the arbitration clause. Accordingly, this claim is clearly a defense to an anticipated attempt by the defendants to compel arbitration, rather than a cause of action in itself.  As the defendants have not attempted to invoke the arbitration clause which is the subject of this claim, nothing regarding the arbitration clauses' enforceability will be addressed herein.

[2]Nick Criado was not served at the time of removal on April 5, 2012.  This defendant waived service of summons in this action on May 15, 2012.  Title 28, United States Code, Section 1446 mandates only that "all defendants who have been properly joined and served" join or consent to removal.

valid claims against defendant Criado which were properly included as a part of this civil action, and as such, the entire case must be remanded for lack of subject matter jurisdiction.  This motion is now fully briefed and ripe for disposition by this Court.  For the reasons that follow, the plaintiffs' motion to remand is denied.

## II.   Applicable Law

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter.  28 U.S.C. § 1441.  Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331 and (2) those involving citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interests and costs pursuant to 28 U.S.C. § 1332(a).  The party seeking removal bears the burden of establishing federal jurisdiction.  See Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994).  Removal jurisdiction is strictly construed due to "significant federalism concerns," implicated by abrogating a state court of the ability to decide a case over which it has jurisdiction.  Id.  Thus, if federal jurisdiction is doubtful, the federal court must remand.  Id.

However, when a defendant removes a case that, on its face, does not present complete diversity, courts are permitted to utilize the doctrine of fraudulent joinder to examine the record in

more depth to determine whether the non-diverse parties are real parties in interest to the action.  Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999).   Under the doctrine of fraudulent joinder, a defendant may remove a case on the basis of diversity jurisdiction even if a non-diverse defendant is a party to the case, so long as the removing party can prove that the non-diverse defendant was fraudulently joined to the action.   Id.  Fraudulent joinder "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."   Id.

## III. Discussion

In their notice of removal, the defendants argue that this Court has jurisdiction over this case because defendant Criado, who along with the plaintiffs is a resident of West Virginia, was fraudulently joined in this action.   To establish fraudulent joinder, "the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'"  Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)) (emphasis in original).   A claim of fraudulent joinder places a heavy burden on the defendants.  Marshall, 6 F.3d at 232.   "[T]he defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after

4

resolving all issues of fact and law in the plaintiff's favor. A claim need not ultimately succeed to defeat removal; only a possibility of right to relief need be asserted." Id. at 232-33 (internal citations omitted). Further, the burden is on the defendants to establish fraudulent joinder by clear and convincing evidence. Rinehart v. Consolidated Coal Co., 660 F. Supp. 1140, 1141 (N.D. W. Va. 1987).

Here, the defendants do not allege outright fraud in the plaintiffs' pleadings. Instead, the defendants argue that the plaintiffs simply do not assert a claim against Mr. Criado. Therefore, to defeat the plaintiffs' motion to remand, the defendants must establish by clear and convincing evidence that, even resolving all issues of fact and law in the plaintiffs' favor, the plaintiffs have not alleged any possible claim against defendant Criado. The defendants have met this burden.

The plaintiffs have alleged that defendant Criado improperly notarized the Lease outside of their presence. They name him as a defendant to the allegations raised in Counts VI, VII, IX, X and XI, which allege notary public improprieties, improper attestation and acknowledgment, slander of title, the tort of outrage, and civil conspiracy, respectively. The plaintiffs acknowledge that liability against defendant Criado which may result from his allegedly improper notarization of the Lease must result from the Uniform Notary Act ("UNA"), W. Va. Code § 29C-6-101. The UNA holds notaries "liable to the persons involved for all damages proximately caused by the notary's official misconduct." Id. In

5

support of liability under this framework and the claims asserted in their complaint, the plaintiffs allege that defendant Criado conspired with the other defendants in their fraudulent endeavor to effectuate the Lease, and that the endeavor was only perfected by recordation of the Lease, which was impossible without defendant Criado's notarization.   The plaintiffs also focus on the heavy burden necessary for the defendants to show fraudulent joinder and insist that, due to their allegations of notary misconduct and of civil conspiracy between the parties to defraud the plaintiffs, the defendants cannot carry their burden of showing that there is <u>no possibility</u> of liability on defendant Criado's part.   <u>See</u> W. Va. Code § 29C-6-101; <u>Marshall</u>, 6 F.3d at 232-33.

In response, defendants EQT and Varner[3] assert that they have met their burden of proving that defendant Criado was fraudulently joined in this action.   The defendants argue that because the plaintiffs acknowledge that they signed the Lease, under West Virginia law, they cannot show that defendant Criado's alleged improper notarization of the same proximately caused any injury which they allege to have resulted from the Lease.   For the following reasons, this Court agrees with the defendants that no injury can be shown to have resulted from any of the malfeasance alleged against defendant Criado, and as a result, will deny the plaintiffs' motion to remand.

---

[3]Defendant Criado has not joined in the response to the motion to remand.

6

As the defendants note, under West Virginia law, the proper notarization of the Lease is immaterial to the validity and enforceability of that lease between the parties thereto.  This is because, under West Virginia Code § 31-1-1, transfers in an interest in land need only be in writing and signed by all parties to the transfer in order to be enforceable and valid between the parties to the transfer.  See W. Va. Code § 31-1-1. There is no mandate under West Virginia law which requires proper notarization of a deed or lease in order to render it enforceable. The purpose of a notary is "merely to acknowledge the authenticity of the signature." Wolfe v. Greentree Mortg. Corp., No. 3:09cv74, 2010 U.S. Dist. LEXIS 6005, *3 (N.D. W. Va. Jan. 26, 2010).  In short, the only element of validity of the Lease to which a notarization attests is the authenticity of the signatures thereto.

Accordingly, as other courts in this district have found, the plaintiffs' admission that the signatures on the document are authentic, precludes any finding that the plaintiffs' claimed injuries which resulted from the Lease were proximately caused by its allegedly improper notarization. See id. ("Given the fact that the plaintiff does not contest the fact that she, in fact, signed the deed of trust, there can be no damage emanating from the notary public's failure to properly acknowledge that signature. Since there is no damage, there is no 'glimmer of hope' of a judgment against defendant Freda [the notary public]."); Heller v. TriEnergy, Inc., No. 5:12cv45, 2012 U.S. Dist. LEXIS 94003, at *21-22 (N.D. W. Va. July 9, 2012) ("[A]ny finding of proximate cause

here is precluded by [the plaintiffs'] own concession that [they] signed the Lease. Without proximate cause, there can be no possible claim against Trout."); <u>May v. Nationstar Mortgage, LLC</u>, No. 3:12cv43, 2012 U.S. Dist. LEXIS 102956, at *16 (Plaintiff has no possible claim of unconscionable conduct against a notary public when she admits that she signed the subject loan documents.) (<u>citing</u> <u>Wolfe</u>, 2010 U.S. Dist. LEXIS 6005, at *3).

The plaintiffs attempt to avoid this inevitable conclusion through two separate but related arguments. First, they assert that their complaint alleges that the concerted effort by all three defendants, who they allege engaged in a civil conspiracy to defraud and otherwise cause damage to the plaintiffs through the execution of the Lease, resulted in the claimed damages. The plaintiffs claim that, even if Criado cannot be held liable for his own alleged malfeasance, he can be held liable for the wrongdoing of his co-conspirators. It is true that, under West Virginia law, co-conspirators can be held liable for torts which they did not commit but for which they "shared a common plan for its commission with the actual perpetrator(s)." Syl. pt. 9, <u>Dunn v. Rockwell</u>, 689 S.E.2d 255 (W. Va. 2009).

However, this principle alone is an overly simplistic statement of the necessary requirements for civil conspiracy liability in West Virginia. The West Virginia Supreme Court of Appeals has clarified that, while liability can attach under civil conspiracy law for tortious activity committed by other co-conspirators, liability does not lie with the conspiracy itself.

Id. at 269.  Rather, "'[i]t is the tort, and each tort, not the conspiracy, that is actionable.'"  Id. (quoting Segall v. Hurwitz, 339 N.W.2d 333, 338 (Wis. App. 1983)).  Accordingly, beyond agreement with a tortious purpose, co-conspirators must all act in some way which "promoted" the tort.  Id. (internal quotation marks omitted).  Here, the alleged wrongful act committed by Criado, the improper notarization of the Lease outside of the presence of the plaintiffs, did nothing to promote the alleged "unlawful purpose" alleged in the complaint.

Because West Virginia law requires deeds and leases to be notarized in order to be recorded, the plaintiffs assert that Criado's allegedly improper notarization was necessary to "perfect" the conspiracy.  However, this argument ignores the fact that the recordation of the Lease, along with the notarization thereof, is inconsequential to the enforceability of the Lease between the parties to this civil action, and thus could not have aided or contributed to any alleged conspiracy to defraud the plaintiffs through the execution of the Lease.  As stated above, the plaintiffs' complaint argues that the Lease is unconscionable as written and unenforceable due to fraud in the inducement of the Lease.  However, it does not argue that the Lease is unenforceable because the plaintiffs never agreed to or signed it.  Accordingly, while a lack of a proper attestation would have prevented the Lease from being recorded, as explained above, the Lease could not be found to be unenforceable between the parties for that reason.  Any wrongdoing by Criado in the notarization of the Lease thus does

nothing to further the alleged conspiracy to fraudulently induce the plaintiffs to execute an unconscionable lease document.[4]

As a second attempt to avoid the conclusion that defendant Criado's alleged improper actions have not caused any injury to the plaintiffs, the plaintiffs argue that because the Lease was recorded, it became enforceable as to third parties, and thus foreclosed any possibility of the plaintiffs leasing the oil and gas rights to their property to another company. However, the plaintiffs do not contend in their complaint or in the briefing of their motion to remand, that they have at any time attempted to re-lease their oil and gas rights only to be impeded from doing so by the recorded Lease. As such, to argue that they have been injured by an inability to re-lease the oil and gas rights to their property is purely speculation, and as there has been no actual injury in this regard, cannot form the basis for liability.

Further, even if the plaintiffs had attempted to re-lease the oil and gas rights to their property, the argument that an unrecorded lease would not have been enforceable as to a third party is overly simplistic. In West Virginia, unrecorded deeds and

---

[4]In the briefing of the motion to remand, the plaintiffs also allege that the defendants to this action were engaged in a "joint enterprise." However, this allegation is also insufficient to create possible liability on the part of defendant Criado. As Judge Groh correctly noted in May, a joint enterprise must first be established before "each venturer [may be] liable for the unlawful acts of a co-venturer." May, 2012 U.S. Dist. LEXIS 102956, at *14-15 n.1 (quoting Short v. Wells Fargo Bank Minn., N.A., 401 F. Supp. 2d 549, 563 (S.D. W. Va. 2005)). Accordingly, when the "substantive causes of action against [the allegedly fraudulently joined defendant] fail, . . ., there can be no unlawful acts to support a joint venture." Id.

leases to real property are unenforceable against later third party purchasers and/or lessees of that property only if that third party lacks notice of the existence of the prior lease or deed.  <u>Farrar v. Young</u>, 230 S.E.2d 261, 265 (W. Va. 1976).  Notice is imputed upon all third parties if the lease or deed is recorded.  However, it is also so imputed if, for any reason, reasonable research and diligence on the part of the later purchaser/lessee would have yielded notice of the Lease, or if they are aware of circumstances "sufficient to put a prudent buyer on inquiry" as to its existence.  <u>Fanti v. Welsh</u>, 161 S.E.2d 501, 505 (W. Va. 1968).  As such, it is highly speculative to assume that another possible lessee would not have had notice of the existence of the Lease through means other than the recording.  For all of these reasons, there is no possibility that the plaintiffs would be able to establish liability on the part of defendant Criado, and he has been fraudulently joined to this action.  As a result, this Court must deny the plaintiffs' motion for remand.

## IV.  <u>Conclusion</u>

For the reasons stated above, the plaintiffs' motion to remand (ECF No. 10) is DENIED.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to counsel of record herein.

DATED:     December 10, 2012


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE